[Civ. No. 2211. Second Appellate District.—February 5, 1917.]

ELIZABETH LYNCH, Administratrix, etc., Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

NEGLIGENCE—FOREMAN OF GRAVEL TRAIN—SLIPPING OF CAR FROM INSUFFICIENT SUPPLY OF ELECTRIC POWER.—An electric railway company is not guilty of negligence in failing to furnish sufficient power to move one of its trains, thereby causing a car thereof to slip back upon an employee causing his injury and death, where such employee had full information concerning the actual condition of the power supply.

ID.—DIRECTED VERDICT—REVERSAL OF ORDER—ABUSE OF DISCRETION.— An order directing a verdict for the defendant after the entire case has been presented will not be reversed on appeal, unless the court has abused its discretion in making the order.

ID.—ACTION FOR DEATH—DIRECTED VERDICT—DISCRETION NOT ABUSED. In an action against an electric railway company for damages for the death of a foreman of one of its gravel trains, it is not an abuse of discretion to direct a verdict for the defendant at the close of the entire case, where it appears from the evidence that the deceased stepped between two of the cars for some unexplained reason or impulse, and was killed by the slipping back upon him of a portion of the train on account of lack of power.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

E. B. Drake, for Appellant.

Frank Karr, R. C. Gortner, and A. W. Ashburn, Jr., for Respondent.

CONREY, P. J.—The plaintiff, as administratrix of the estate of her deceased husband, William Edward Lynch, prosecutes this action against the defendant to recover damages on account of the death of her husband, which she alleged was caused by negligence of the defendant employer of said Lynch. The charge is that on the twenty-ninth day of April, 1913, "while the defendant was attempting to draw a gravel train of cars over its tracks on a steep upgrade,

near Redondo Beach, California, the defendant negligently failed to furnish sufficient electricity, the motive power thereof, to pull said train, . . . so that while the said William Edward Lynch was in the act of ·passing between two cars of said train, the front part of said train slipped back against him and caught him between said two cars, crushing him so that he immediately died therefrom.'' The complaint also alleged negligent failure of the motorman to put on brakes as a proximate cause of the accident. After the evidence had been received as offered by the respective parties, the court, on motion of the defendant, instructed the jury to find for the defendant. This the jury did, and· judgment was rendered accordingly. From that judgment the plaintiff has appealed.

At the commencement of the trial, counsel for plaintiff abandoned his claim of negligence on the part of the motorman, and admitted that at the time in question the motorman did throw on the power as quickly as he could, but that before he could put on the power the car slipped back and caught Mr. Lynch between the two cars whereby he was killed. The case was tried upon the charge that the defendant negligently failed to furnish power to make it sufficiently safe for him to work. The circumstances were as follows: The defendant was operating a line of electric cars from Los Angeles to and through Redondo and to a place called Clifton, a short distance south of Redondo. Its passenger-cars did not run beyond Clifton. At a point a half mile or more beyond Clifton defendant had a gravel-pit, to which it had extended a track on which a motor and cars were operated for the transportation of gravel. This track ran on an upgrade from the gravel-pit toward Clifton. Power was obtained through a trolley wire running over the track down· to the gravel-pit, which trolley wire was continuous with the wire used by the passenger-cars running to Clifton, and carried the same supply of power. The result was that sometimes, when cars were actually running on what was called the Clifton section, their consumption of power reduced the supply of power available for the gravel-cars, and there was not always sufficient power to bring the gravel-cars upgrade. A cluster of electric lights on the motor car of the gravel train was utilized by the operatives· of the gravel train to show them whether at any given time there was or was not

power available for their purposes. On the day of the accident Lynch was the foreman in charge of the gravel train, and had under his direction the motorman and two other employees. The cars were started upgrade toward Clifton in the form of a train, the parts of which were in the following order: The motor car was at the north end (toward Clifton); car No. 1 was attached to the motor car, and car No. 2 was attached to car No. 1, and the train was being pulled upgrade toward Clifton. After they started from the gravel-pit the train was stopped two or three times on account of lack of power. When it arrived at a point one hundred feet, more or less, from the top of the grade, the train stopped again and Lynch decided that it would be better to detach car No. 2, deliver car No. 1 on a siding at the top of the grade, and go back later for car No. 2. Lynch, while standing on top of car No. 2, set the hand-brake, and then climbed down and disconnected the air-brake between cars Nos. 1 and 2. Next he gave a signal, in response to which the motorman slackened the pull on car No. 2 so that a coupling-pin could be drawn. This was accomplished by Lynch by pulling a lever at the side of car No. 2. This he was able to do, and did do, without going between the cars. The signal was received by a man who stood by the side of the motorman, and who transmitted the signal to the motorman, the latter not being in position where he could see Lynch's signals. Lynch then signaled for the motor car and car No. 1 to move ahead, and this was done, car No. 2 remaining stationary on the track. When the two cars had moved about three feet the power went off, and the motor car with its attached car No. 1 started back toward car No. 2. In the meantime, for some reason or impulse not explained, Lynch had moved into the space between the rails, immediately in front of car No. 2, and between the coupling apparatus of that car and car No. 1, and as the cars came together he was crushed between them. Hearing Lynch's cry of distress, the man opposite the motorman called to the motorman, who, as quickly as possible, sent his cars forward, the electric power having at that moment returned to the line. Lynch was thereby released, but he had received fatal injuries. There is no direct evidence showing why the power under which the train was moving was lost during the brief interval in which this accident occurred. It does appear, however, that the supply of

power available for the use of the gravel train varied on account of the movements of the passenger-cars; that the men of the gravel train were in the habit of timing their work according to their knowledge of the arriving and leaving time of the passenger-cars on the Clifton section; and that as to whether they had electricity off or on, they judged by the lights on the motor car.

The defendant by its answer denied that it had negligently failed to furnish sufficient electricity to pull the train. This was an admission that the amount of power was not entirely sufficient—the admission being coupled with the denial that such failure was negligent. The evidence showed that this insufficiency was known to Lynch who, for that reason, had caused car No. 2 to be detached. Under all of these circumstances it cannot be that defendant was guilty of negligence causing the injury and death of Lynch, unless it can be maintained that it was the defendant's duty to furnish a supply of power at all times sufficient to move the train, and that it owed this duty to its employees, notwithstanding that they had full information concerning the actual condition of the power supply. This would be a more extreme rule than is necessary to meet the requirement that the employer shall use reasonable care to provide its employees with safe appliances with which to do their work. We have not been referred to any decisions enforcing such extreme rule.

At the time of the accident to William Edward Lynch there was in force an act, approved April 8, 1911, commonly known as the Roseberry Act. Under section 1 thereof it was provided that in any action to recover damages for death resulting from personal injury sustained within this state by an employee while engaged in the line of his duty or the course of his employment as such, in which recovery is sought upon the ground of want of ordinary or reasonable care of the employer, "the fact that such employee may have been guilty of contributory negligence shall not bar a recovery therein where his contributory negligence was slight and that of the employer was gross, in comparison, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee. (Stats. 1911, p. 796.) In addition to its denial of any negligence on its part, the defendant pleaded contributory negligence of the deceased. Appellant contends that by reason of the above-

mentioned statute this defense was not available to the respondent, and that it was solely for the jury to determine the amount or degree of negligence of the employer and employee, or of both, so that the terms of the statute might be applied to the facts thus found. Upon the facts of this case, which we have stated very fully, it probably was very difficult for the trial judge to avoid the conclusion that the gross negligence, comparatively speaking, shown by the evidence, was that of the deceased, rather than of the defendant. For reasons which we are about to state, the judge was authorized to take these facts into consideration in determining how he would instruct the jury, or what he would direct the jury to do.

It is true that, as claimed by appellant, usually in actions of this kind the question of negligence of the defendant should be determined by the jury; and that the court may not grant a nonsuit on the evidence introduced by the plaintiff if that evidence tends to establish the fact of negligence. But the court here directed a verdict for the defendant after the entire case had been presented. This being so, the situation is very much the same as where the jury has returned a verdict and the judge has set aside that verdict as not sustained by the evidence. If the trial court has not abused its discretion in making such order, the order will not be reversed. So here, under like circumstances, the court's order directing a verdict for the defendant should be sustained. The condition of the evidence was such that the judge determined that he would not be justified in allowing the verdict to stand if it deprived the defendant of the defense of contributory negligence to which it seemed well entitled in this case, or he determined that there was not sufficient proof of negligence on the part of defendant. In acting upon this determination his discretion was properly exercised, upon either or both of the grounds above stated. "To withhold a case from the jury is no greater interference than to set aside their verdict." (*Bohn* v. *Pacific Electric Ry. Co.*, 5 Cal. App. 622, [91 Pac. 115], and cases there cited.)

The judgment is affirmed.

James, J., and Shaw, J., concurred.